On Application for Rehearing
The application for rehearing is granted, the original opinion is withdrawn, and the following opinion is substituted therefor.
Defendant Chrysler Credit Corporation appealed from a judgment entered against it and in favor of the plaintiffs in the amount of $20,000. We reverse and remand.
The case arose from the following facts:
In July 1980, Jimmy McKinney bought a Dodge Mirada from Countywide Dodge for his wife's use. He negotiated and executed on behalf of McKinney Ceramic Tile Co., Inc., of which he was president and majority stockholder, a retail installment contract financing the automobile with Chrysler Credit Corporation. McKinney made only two payments pursuant to this agreement.
McKinney returned the car to Countywide Dodge on numerous occasions for repairs. The dealership successfully repaired most of the defects, but never repaired a leak in the roof of the automobile. The leak was so bad that at times, after a rainshower, two inches of water was left standing in the front floor. Because of this repeated leaking, the car's interior had an offensive odor, and the leather interior was damaged.
Mr. McKinney visited the dealership time after time and, at one point in September, explained the problem to the owner of Countywide Dodge, who assured him it would be repaired. It was not. He then wrote letters to the dealership, Chrysler Corporation, and Chrysler Credit Corporation, *Page 1070 
notifying them that he would make no more payments on the vehicle until the leak was repaired. He received no responses to these letters. Chrysler Credit later telephoned him about his failure to make the payments on the vehicle. Once again, he discussed the leak in the roof and was assured that it would be repaired. Soon thereafter, James Smith, a repossession agent of Chrysler Credit, contacted Mrs. McKinney about the car and the McKinney's failure to make the payments on the note. Mrs. McKinney met Smith at a restaurant to discuss the matter. After a conversation, wherein Mrs. McKinney detailed to Smith the problem with the car, she and Smith reached an agreement. Mrs. McKinney testified as follows concerning the agreement:
 "He [Smith] told me that everything was fine, that all he had to do was to get met to take the car in to the lot and it would be fixed. You know, they would fix the leak in it. And, if they fixed the leak in it, then we would bring up the payment, which I agreed to."
Mrs. McKinney called their attorney from the restaurant. He spoke with Smith and confirmed the agreement not to repossess the car unless and until the McKinneys failed to bring the payments up to date following the repair of the vehicle's roof.
Mrs. McKinney and Smith then left the restaurant and drove to the dealership, where Mrs. McKinney surrendered the automobile to the dealership for repairs. The owner of the dealership confirmed the agreement to catch up the past due payments when the car was repaired.
A few days later, Chrysler Credit sent repossession notices to the McKinneys, advising them that the automobile had been repossessed and would be sold within five days after the receipt of those notices. The attorney for the McKinneys corresponded with Chrysler Credit, informing them of the agreement that repossession would not occur unless the repairs were made and the payments were not then brought up to date. Chrysler Credit did not respond to this letter.
The day after the repossession took place, Chrysler Credit called upon Countywide Dodge to pay off the McKinney account, pursuant to its recourse agreement, which it did.
Following these events, Countywide again made numerous attempts to repair the leaking roof in the car. Several times Mr. McKinney went into the dealership and, each time, the roof leaked when tested. Later, Mr. McKinney was told to remove his personal belongings from the vehicle because it was no longer his car and was being sold. Thereupon Mr. McKinney filed suit against Chrysler Credit, Chrysler Corporation, and Countywide Dodge.
The trial court granted Countywide's motion for directed verdict at the close of the plaintiffs' case. The jury returned a verdict against Chrysler Corporation and in favor of the plaintiffs for breach of warranty. That verdict is not an issue in this appeal. The jury also returned a verdict against Chrysler Credit Corporation for $20,000.00 on a conversion claim. Only Chrysler Credit appealed.
Chrysler Credit contends the trial court erred in several particulars, but because we are convinced that a new trial is required because a disqualified juror participated in the trial, we do not address other claimed errors.
On voir dire concerning their qualifications, the trial judge asked the prospective jurors if any of them were unable to read and write. There was no response to the question. Following the trial, it came to the attention of counsel for Chrysler Credit that one of the jurors could neither read nor write and had failed to respond to the question concerning literacy during the voir dire examination by the trial judge. Chrysler Credit filed a motion for new trial, contending that the juror's illiteracy disqualified him from service, and that Chrysler Credit had, therefore, been denied the right to a trial by twelve qualified jurors and was entitled to a new trial. A hearing was held, and the juror was questioned. During this hearing, it was discovered that the juror also had a hearing impairment, *Page 1071 
which Chrysler Credit contends further hindered him in his ability to properly comprehend the procedures at the trial. After the hearing, the trial court denied the motion for a new trial. This appeal followed.
Section 12-16-60, Ala. Code 1975, sets forth the following qualifications for jurors. It reads:
 "(a) A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
 "(1) Is a citizen of the United States, has been a resident of the county for more than 12 months and is over the age of 19 years;
 "(2) Is able to read, speak, understand and follow instructions given by a judge in the English language;
 "(3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror;
 "(4) Has not lost the right to vote by conviction for any offense involving moral turpitude."
Chrysler Credit claims that the foregoing statute makes the ability to read and write an indispensable prerequisite to jury service, and that if an illiterate juror serves on a jury, a new trial must be granted. We agree that a new trial is required where, as here, the prospective jury venire was specifically asked whether each member could read and write the English language and indicated by silence that each could.
We have held that the statutory prerequisite to jury service requiring the absence of any conviction of an offense involving moral turpitude is an absolute, and that such a conviction is an automatic disqualification from jury service where the juror was asked that question and failed to respond. In Beasley v.State, 39 Ala. App. 182, 96 So.2d 693 (1957), we held that the failure of a prospective juror to answer truthfully when asked the question concerning the conviction of a crime required a new trial. In Beasley, the prospective juror had been previously convicted of adultery. He was silent when the question concerning the conviction of a crime was asked by the trial judge, and he served on the jury. This Court held that this prior conviction was both a disqualification and a common law ground for challenge for cause. Thus, the trial court's denial of the motion for new trial based on such a disqualification was error.
We need not decide under the facts in this case whether a new trial must automatically be granted when it is shown after judgment that a juror served who was disqualified under the statute. We do, however, hold that a new trial is mandated where a juror serves who has failed to respond to a specific question based upon a statutory disqualification.
The appellees' reliance upon Freeman v. Hall, 286 Ala. 161,238 So.2d 330 (1970), and Martin v. Mansell, 357 So.2d 964
(Ala. 1978), is misplaced. Those cases involved the failure of a juror to respond to questions asked by counsel on voir dire which were designed to aid a lawyer in his peremptory challenges under Title 7, § 52, Code of Alabama (now Rule 47, Alabama Rules of Civil Procedure). Those cases do not involve matters which disqualify a juror and thereby render him or her subject to challenge for cause. In such a case, we have left it to the trial court to determine whether or not the failure to respond was so prejudicial as to require a new trial.
We are convinced that Chrysler Credit was entitled to a new trial when it proved that the juror was asked whether he could read and write and failed to respond and, particularly so, when it was also shown that his hearing was impaired. The transcripts of the hearing on the motion for new trial contain evidence that the juror in question did not have the capacity to understand all the evidence in the case. It is not disputed that he could neither read nor write, and several times during the course of the hearing, the juror could not hear the *Page 1072 
questions posed to him, and they had to be repeated. There were numerous items of documentary evidence submitted at trial. Much of this evidence was explained during the testimony at trial, but the juror's hearing impairment might have deprived him of the benefit of that testimony. Chrysler Credit "should not be subjected to the peril of having a juror put upon [it] who is disqualified to sit as a juror in the case." Carter v. Beasley,285 Ala. 9, 15, 228 So.2d 770, 776 (1969), quoting Morris v.McClellan, 169 Ala. 90, 97, 53 So. 155, 156 (1910). We, therefore, hold that the trial court erred in denying the new trial. We reverse and remand the cause for a new trial.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, EMBRY, BEATTY and ADAMS, JJ., concur.